TROY LAW, PLLC
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:     718) 762-1324
Fax:    (718) 762-1342
*Attorney for the Plaintiff, proposed FLSA*
*Collective and Proposed Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

JUNJIANG JI
*on behalf of himself and others similarly situated*
                                                    Plaintiff,
                          v.
JLING INC.
    d/b/a Showa Hibachi,
JANNEN OF AMERICA, INC.
    d/b/a Showa Hibachi,
JOHN ZHONG E HU, and
JIA LING HU
                                        Defendants.
-------------------------------------------------------------X

**Case No:**

**29 U.S.C. § 216(b) COLLECTIVE**
**ACTION & F.R.C.P. 23  CLASS**
**ACTION**

**COMPLAINT**

     Plaintiff JUNJIANG JI (hereafter referred to as "Plaintiff"), on behalf of himself and

other similarly situated, by and through their attorney, TROY LAW, PLLC, hereby brings this

complaint against Defendants JLING INC. d/b/a Showa Hibachi, JANNEN OF AMERICA,

INC. d/b/a Showa Hibachi, JOHN ZHONG E HU, and JIA LING HU and alleges as follows:

<u>**INTRODUCTION**</u>

1. This action is brought by Plaintiff, on behalf of himself as well as other employees similarly

   situated, against Defendants for alleged violations of the Federal Labor Standards Act,

   ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from

   Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed

widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay its employees, including Plaintiff, overtime compensation for all hours worked over forty (40) each workweek.

3. Defendants refused to record all of the time that Plaintiff and similarly situated employed by Corporate Defendants work or worked, including work done in excess of forty hours each week.

4. Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs.

5. Plaintiff further alleges pursuant to New York Labor Law § 650 *et seq*. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that he is entitled to recover from the Defendants:   (1) unpaid overtime compensation, (2) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (4) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (5) 9% simple prejudgment interest provided by NYLL, (6) post-judgment interest, and (7) attorney's fees and costs.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

8. Plaintiff JUNJIANG JI ("JI") was employed first by JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI, and by JLING, INC. d/b/a SHOWA HIBACHI located at 1929 Wantagh Avenue, Wantagh, NY 11793 as a cook.

## DEFENDANTS

### Corporate Defendant

9. Defendant JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI (hereinafter "JANNEN OF AMERICA"), is a domestic business corporation organized under the laws of the State of New York with a principal address at 1929 Wantagh Avenue, Wantagh, New York 11793 on July 10, 1991.

10. Upon information and belief, JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

11. Upon information and belief, JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI purchased and handled goods moved in interstate commerce.

12. Defendant JLING INC. d/b/a SHOWA HIBACHI (hereinafter "JLING INC"), is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 1929 Wantagh Avenue, Wantagh, New York 11793 on May 9, 2012.

13. Upon information and belief, JLING INC. d/b/a SHOWA HIBACHI is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

14. Upon information and belief, JLING INC. d/b/a SHOWA HIBACHI purchased and handled goods moved in interstate commerce.

15. Upon information and belief, JANNEN OF AMERICA, INC. and JLING INC. are considered the same employer under the New York Anti-Shirt Changer Law, §219.4, because "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

16. At all times relevant to this action, Corporate Defendants do or did business as Showa Hibachi.

17. At all relevant times, the work performed by Plaintiff and other similarly situated employees was directly essential to the businesses operated by JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and/or JLING INC. d/b/a SHOWA HIBACHI.

*Owner/ Operator Defendants*

18. Upon information and belief, JOHN ZHONG E HU determines the rates of pay, work schedule (including work hours and days off), work load and employment of all employees at JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and JLING INC. d/b/a SHOWA HIBACHI.

19. Upon information and belief, JOHN ZHONG E HU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and

severally liable with JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and JLING INC. d/b/a SHOWA HIBACHI.

20. Upon information and belief, JIALING HU determines the rates of pay, work schedule (including work hours and days off), work load and employment of all employees at JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and JLING INC. d/b/a SHOWA HIBACHI.

21. Upon information and belief, JIALING HU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and JLING INC. d/b/a SHOWA HIBACHI.

22. Plaintiff has fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

23. Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

24. On December 5, 2011, the United States Department of Labor filed a Complaint (11-cv-5931 (JFB)(WPW)) alleging minimum wage and overtime violations against Jannen of America, Inc., the predecessor of JLing, Inc., and John Zhong Hu.

25. During the same month, Jannen of America, Inc., and John Zhong Hu waived their answer and agreed to a consent judgment acknowledging their responsibility to conform to FLSA requirements and agreeing to pay the violation and its interest due.

26. Upon information and belief, JLing, Inc. was established on May 9, 2012 as the successor of

Jannen of America, Inc., and Jia Ling Hu, the principal of the JLing Inc., is the spouse of John Zhong Hu.

27. John Zhong Hu and Jia Ling Hu are the principals of Showa Hibachi Restaurant.

28. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff their lawfully overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

29. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

30. Defendants failed to keep full and accurate records of Plaintiff's hours and wages.

31. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations.

32. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

33. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiff worked over ten (10) hours would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

34. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.

35. Upon personal knowledge of Plaintiff Ji, Hu, known as "Boss," is the owner and manager of

Showa Hibachi. He, along with his wife, the "Lady Boss" had the power to hire and fire employees, raise their wages, set time schedules for work, and pay employees.

36. Under NYLL §219.4 (the "anti shirtchanger" law), violators of Article 6 (payment of wages) are considered the same employer provided that "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

37. Under the anti shirtchanger law, JANNEN OF AMERICA, INC. d/b/a SHOWA HIBACHI and JLING INC. are considered the same employer, since the manager/owner was always Hu worked in substantially the same work in substantially the same working conditions.

### *Plaintiff JUNJIANG JI*

38. On or about September 25, 2006, Plaintiff JUNJIANG JI was hired by Defendants to work as a cook at JANNEN OF AMERICA, INC. located at 1929 Wantagh Avenue, Wantagh, NY 11793.

**2006/09/25-2006/12/31**

39. Between on or about September 25, 2006 and December 31, 2006, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on four (4) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

40. During this period, Plaintiff worked around sixty eight (68) hours each week.

41. During this period, Plaintiff was paid a flat compensation of around eighty four dollars ($84) per day worked, plus incentive pay.

42. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff additional incentive pay as part of his compensation.

43. During this period, for example, Plaintiff received an additional sixty dollars ($60) each

month each month in "dining room incentive pay" from the Owner/ Operator Defendants, and ninety dollars ($90) from the two hibachi staff.

44. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

45. As a result, Plaintiffs received a total of around one hundred and fifty dollars ($150) in incentive pay each month in addition to eighty four dollars ($84) for each day that he worked at Showa Hibachi.

**2007/01/01-2009/05/30**

46. Between on or about January 1, 2007 and May 30, 2009, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on four (4) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

47. During this period, Plaintiff worked around sixty eight (68) hours each week.

48. During this period, Plaintiff was paid a flat compensation of around ninety two dollars ($92) ($92) per day worked, plus incentive pay.

49. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff additional incentive pay as part of his compensation.

50. During this period, for example, Plaintiff received an additional sixty dollars ($60) each month each month in "dining room incentive pay" from the Owner/ Operator Defendants, and ninety dollars ($90) from the two hibachi staff.

51. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

52. As a result, Plaintiffs received a total of around one hundred and fifty dollars ($150) in incentive pay each month in addition to ninety two dollars ($92) for each day that he worked at Showa Hibachi.

**2009/06/01-2009/06/30**

53. <mark>Between</mark> on or about June 1, 2009 and June 30, 2009, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on five (5) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

54. During this period, Plaintiff worked around seventy nine (79) hours each week.

55. During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked, plus incentive pay.

56. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

57. During this period, for example, Plaintiff received an additional sixty dollars ($60) each month each month in "dining room incentive pay" from the Owner/ Operator Defendants, and ninety dollars ($90) from the two hibachi staff.

58. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

59. As a result, Plaintiffs received a total of around one hundred and fifty dollars ($150) in incentive pay each month in addition to eighty four dollars ($84) for each day that he worked at Showa Hibachi.

**2009/07/01-2009/07/14**

60. <mark>Between</mark> on or about July 1, 2009 and July 14, 2009, Plaintiff's regular work schedule ran

from 11:00-22:00, for eleven (11) hours, on five (5) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

61. During this period, Plaintiff worked around seventy nine (79) hours each week.

62. During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

63. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

64. During this period, for example, Plaintiff received an additional forty dollars ($40) each month in "dining room incentive pay" from the Owner/ Operator Defendants, and sixty dollars ($60) each month from the two hibachi staff.

65. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

66. As a result, Plaintiffs received a total of around one hundred dollars ($100) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

### 2009/07/15-2009/07/23

67. Between on or about July 15, 2009 and July 23, 2009, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on five (5) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

68. During this period, Plaintiff worked around seventy nine (79) hours each week.

69. During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

70. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

71. During this period, for example, Plaintiff received an additional forty dollars ($40) each month in "dining room incentive pay" from the Owner/ Operator Defendants, and sixty dollars ($60) each month from the two hibachi staff.

72. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

73. As a result, Plaintiffs received a total of around one hundred dollars ($100) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

74. During this period, the relevant New York State minimum wage is seven dollars and fifteen cents ($7.15).

**2009/07/24-2009/09/30**

75. Between on or about July 24, 2009 and September 30, 2009, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on five (5) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

76. During this period, Plaintiff worked around seventy nine (79) hours each week.

77. During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

78. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

79. During this period, for example, Plaintiff received an additional forty dollars ($40) each

month in "dining room incentive pay" from the Owner/ Operator Defendants, and sixty

dollars ($60) each month from the two hibachi staff.

80. Upon information and belief, the two hibachi staff are required by restaurant policy to share

fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout

or eat-in orders.

81. As a result, Plaintiffs received a total of around one hundred dollars ($100) in incentive pay

each month in addition to one hundred and five dollars ($105) for each day that he worked

at Showa Hibachi.

82. During this period, the relevant New York State minimum wage is seven dollars and twenty

five cents ($7.25).

83. During this period, the New York State liquidated damages rate is twenty five percent

(25%) of the New York Labor Law damages.

**2009/10/01-2011/04/08**

84. <mark>Between</mark> on or about October 1, 2009 and April 8, 2011, Plaintiff's regular work schedule

ran from 11:00-22:00, for eleven (11) hours, on four (4) days between Sundays and

Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

85. During this period, Plaintiff worked around sixty eight (68) hours each week.

86. During this period, Plaintiff was paid a flat compensation of around one hundred and five

dollars ($105) per day worked.

87. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive

pay as part of his compensation.

88. During this period, for example, Plaintiff received an additional forty dollars ($40) each

month in "dining room incentive pay" from the Owner/ Operator Defendants, sixty dollars

($60) each month from the two hibachi staff, and one hundred and twenty dollars ($120) each month for Plaintiff to wash dishes.

89. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

90. As a result, Plaintiffs received a total of around two hundred and twenty dollars ($220) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

91. During this period, the relevant New York State minimum wage is seven dollars and twenty five cents ($7.25).

92. During this period, the New York State liquidated damages rate is twenty five percent (25%) of the New York Labor Law damages.

### 2011/04/09-2011/12/31

93. Between on or about April 9, 2011 to December 31, 2011, Plaintiff's regular work schedule ran from 11:00-22:00, for eleven (11) hours, on four (4) days between Sundays and Thursdays, and from 11:00-23:00, for twelve (12) hours, on Fridays and Saturdays.

94. During this period, Plaintiff worked around sixty eight (68) hours each week.

95. During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

96. Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

97. During this period, for example, Plaintiff received an additional forty dollars ($40) each month in "dining room incentive pay" from the Owner/ Operator Defendants, sixty dollars

($60) each month from the two hibachi staff, and one hundred and twenty dollars ($120) each month for Plaintiff to wash dishes.

98. Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

99. As a result, Plaintiffs received a total of around two hundred and twenty dollars ($220) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

100. During this period, the relevant New York State minimum wage is seven dollars and twenty five cents ($7.25).

101. During this period, the New York State liquidated damages rate is one hundred percent (100%) of the New York Labor Law damages.

**2012/01/01-2012/08/20**

102. Between on or about January 1, 2012 to August 20, 2012, Plaintiff's regular work schedule ran from 12:00-22:00, for ten (10) hours, on either three (3) or four (4) days between Sundays and Thursdays, and from 12:00-23:00, for eleven (11) hours, on Fridays and Saturdays.

103. On average, Plaintiff worked three and a half (3.5) days between Sundays and Thursdays, since he mostly worked three (3) days or four (4) days on an alternating week basis. If he works three (3) days the first week, for instance, he would work four (4) days the next week.

104. During this period, Plaintiff worked around fifty seven (57) hours each week.

105. During this period, Plaintiff was paid a flat compensation of around one hundred

and five dollars ($105) per day worked.

106.      Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

107.      During this period, for example, Plaintiff received an additional forty dollars ($40) each month in "dining room incentive pay" from the Owner/ Operator Defendants, sixty dollars ($60) each month from the two hibachi staff, and one hundred and twenty dollars ($120) each month for Plaintiff to wash dishes.

108.      Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

109.      As a result, Plaintiffs received a total of around two hundred and twenty dollars ($220) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

110.      During this period, the relevant federal minimum wage is seven dollars and twenty five cents ($7.25).

111.      During this period, the relevant New York State minimum wage is seven dollars and twenty five cents ($7.25).

112.      During this period, the New York State liquidated damages rate is one hundred percent (100%) of the New York Labor Law damages.

## 2012/08/21-2013/12/30

113.      Between on or about August 21, 2012 to December 30, 2013, Plaintiff's regular work schedule ran from 12:00-22:00, for ten (10) hours on four (4) days between Sundays and Thursdays, and from 12:00-23:00, for eleven (11) hours, on Fridays and Saturdays.

114.     During this period, Plaintiff worked around sixty two (62) hours each week.

115.     During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

116.     Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

117.     During this period, for example, Plaintiff received an additional twenty five dollars ($25) each month in "dining room incentive pay" from the Owner/ Operator Defendants, forty five dollars ($45) each month from the two hibachi staff, and one hundred and twenty dollars ($120) each month for Plaintiff to wash dishes.

118.     Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

119.     As a result, Plaintiffs received a total of around one hundred and ninety dollars ($190) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

120.     During this period, the relevant federal minimum wage is seven dollars and twenty five cents ($7.25).

121.     During this period, the relevant New York State minimum wage is seven dollars and twenty five cents ($7.25).

122.     During this period, the New York State liquidated damages rate is one hundred percent (100%) of the New York Labor Law damages.

### 2013/12/31-2014/05/30

123.     Between on or about December 31, 2013 to May 30, 2014, Plaintiff's regular work

schedule ran from 12:00-22:00, for ten (10) hours on four (4) days between Sundays and

Thursdays, and from 12:00-23:00, for eleven (11) hours, on Fridays and Saturdays.

124.      During this period, Plaintiff worked around sixty two (62) hours each week.

125.      During this period, Plaintiff was paid a flat compensation of around one hundred

and five dollars ($105) per day worked.

126.      Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received

incentive pay as part of his compensation.

127.      During this period, for example, Plaintiff received an additional thirty dollars ($30)

each month from the two hibachi staff, and one hundred and twenty dollars ($120) each

month for Plaintiff to wash dishes.

128.      Upon information and belief, the two hibachi staff are required by restaurant policy

to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare

hibachi takeout or eat-in orders.

129.      As a result, Plaintiffs received a total of around one hundred and fifty dollars ($150)

in incentive pay each month in addition to one hundred and five dollars ($105) for each day

that he worked at Showa Hibachi.

130.      During this period, the relevant federal minimum wage is seven dollars and twenty

five cents ($7.25).

131.      During this period, the relevant New York State minimum wage is eight ($8.00).

132.      During this period, the New York State liquidated damages rate is one hundred

percent (100%) of the New York Labor Law damages.

**2014/06/01-2014/10/31**

133.      Between on or about June 1, 2014 and October 31, 2014, Plaintiff's regular work

schedule ran from 12:00-22:00, for ten (10) hours on three (3) to four (4) days between

Sundays and Thursdays, and from 12:00-23:00, for eleven (11) hours, on and Saturdays.

134.      During this period, Plaintiff worked around forty six (46) hours each week.

135.      During this period, Plaintiff was paid a flat compensation of around one hundred

and five dollars ($105) per day worked.

136.      Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received

incentive pay as part of his compensation.

137.      During this period, for example, Plaintiff received an additional thirty dollars ($30)

each month from the two hibachi staff, and eighty dollars ($80) each month for Plaintiff to

wash dishes.

138.      Upon information and belief, the two hibachi staff are required by restaurant policy

to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare

hibachi takeout or eat-in orders.

139.      As a result, Plaintiffs received a total of around one hundred and ten dollars ($110)

in incentive pay each month in addition to one hundred and five dollars ($105) for each day

that he worked at Showa Hibachi.

140.      During this period, the relevant federal minimum wage is seven dollars and twenty

five ($7.25).

141.      During this period, the relevant New York State minimum wage is eight ($8.00).

142.      During this period, the New York State liquidated damages rate is one hundred

percent (100%) of the New York Labor Law damages.

**2014/11/01-2014/12/30**

143.      Between on or about November 1, 2014 to December 30, 2014, Plaintiff's regular

work schedule ran from 12:00-22:00, for ten (10) hours on three (3) to four (4) days between Sundays and Thursdays, and from 12:00-23:00, for eleven (11) hours, on and Saturdays.

144.     During this period, Plaintiff worked around forty six (46) hours each week.

145.     During this period, Plaintiff was paid a flat compensation of around one hundred and five dollars ($105) per day worked.

146.     Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received incentive pay as part of his compensation.

147.     During this period, for example, Plaintiff received an additional thirty dollars ($30) each month from the two hibachi staff.

148.     Upon information and belief, the two hibachi staff are required by restaurant policy to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare hibachi takeout or eat-in orders.

149.     As a result, Plaintiffs received a total of around thirty ($30) in incentive pay each month in addition to one hundred and five dollars ($105) for each day that he worked at Showa Hibachi.

150.     During this period, the relevant federal minimum wage is seven dollars and twenty five ($7.25).

151.     During this period, the relevant New York State minimum wage is eight ($8.00).

152.     During this period, the New York State liquidated damages rate is one hundred percent (100%) of the New York Labor Law damages.

**2014/12/31-2015/07/03**

153.     Between on or about December 31, 2014 and July 3, 2015, Plaintiff's regular work

schedule ran from 12:00-22:00, for ten (10) hours on three (3) to four (4) days between

Sundays and Thursdays, and from 12:00-23:00, for eleven (11) hours, on and Saturdays.

154.     During this period, Plaintiff worked around forty six (46) hours each week.

155.     During this period, Plaintiff was paid a flat compensation of around one hundred

and five dollars ($105) per day worked.

156.     Though Plaintiff worked as a kitchen staff (a chef), Plaintiff nevertheless received

incentive pay as part of his compensation.

157.     During this period, for example, Plaintiff received an additional twenty dollars

($20) each month from the two hibachi staff.

158.     Upon information and belief, the two hibachi staff are required by restaurant policy

to share fifty cents ($0.50) with the kitchen staff whenever they are unable to prepare

hibachi takeout or eat-in orders.

159.     As a result, Plaintiffs received a total of around twenty ($20) in incentive pay each

month in addition to one hundred and five dollars ($105) for each day that he worked at

Showa Hibachi.

160.     During this period, the relevant federal minimum wage is seven dollars and twenty

five cents ($7.25).

161.     During this period, the relevant New York State minimum wage is eight dollars and

seventy five cents ($8.75).

162.     During this period, the New York State liquidated damages rate is one hundred

percent (100%) of the New York Labor Law damages.

163.     At all relevant times, Plaintiff was not given a fixed time for lunch or dinner. He

had around ten (10) to fifteen (15) minutes to eat while on duty.

164.     Plaintiff was not compensated at least at one-and-one-half of the minimum wage or

his calculated hourly wage, whichever is greater, for all hours worked above forty (40) in

each workweek.

165.     Plaintiff was not compensated for New York's "spread of hours" premium for shifts

that lasted longer than ten (10) hours.

## COLLECTIVE ACTION ALLEGATIONS

166.   Plaintiff brings this action individually and as class representative individually and on

behalf of all other and former non-exempt kitchen staff, deliverymen, servers, and busboys

who have been or were employed by the Defendants for up to the last three (3) years,

through entry of judgment in this case (the "Collective Action Period") and whom were not

compensated at least the hourly minimum wage and/or overtime compensation for all hours

worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

167.   Plaintiff bring his NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C.

P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the

date that is six years before the filing of the Complaint in this case as defined herein (the

"Class Period").

168.   All said persons, including Plaintiff, are referred to herein as the "Class."

169.   The Class members are readily ascertainable. The number and identity of the Class

members are determinable from the records of Defendants. The hours assigned and worked,

the positions held, and the rate of pay for each Class Member is also determinable from

Defendants' records. For purpose of notice and other purposes related to this action, their

names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

170.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

171.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

   a.   Whether Defendant employed Plaintiff and the Class within the meaning of the New York law;

   b.   Whether Plaintiff and Class members are entitled to and paid overtime under the New York Labor Law;

   c.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

   d.   Whether Defendants maintained  policy, pattern and/or practice of failing to provide requisite statutory meal periods;

   e.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or or timely thereafter;

   f.   At what common rate, or rates subject to common method of calculation was

       and is Defendants required to pay the Class members for their work;

*Typicality*

172.   Plaintiff's claims are typical of those claims which could be alleged by any member of

       the Class, and the relief sought is typical of the relief that would be sought by each member

       of the Class in separate actions. All the Class members were subject to the same corporate

       practices of Defendants, as alleged herein, of failing to pay overtime compensation.

       Defendants' corporate wide policies and practices affected all Class members similarly, and

       Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class

       member. Plaintiff and other Class members sustained similar losses, injuries and damages

       arising from the same unlawful policies, practices and procedures.

*Adequacy*

173.   Plaintiff is able to fairly and adequately protect the interests of the Class and have no

       interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced

       and competent representing Plaintiff in both class action and wage and hour employment

       litigation cases.

*Superiority*

174.   A class action is superior to other available methods for the fair and efficient adjudication

       of the controversy, particularly in the context of wage and hour litigation where individual

       Class members lack the financial resources to vigorously prosecute a lawsuit against

       corporate defendants. Class action treatment will permit a large number of similarly situated

       persons to prosecute their common claims in a single forum simultaneously, efficiently, and

       without the unnecessary duplication of efforts and expenses that numerous individual

actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

175.   Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

176.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

177.   The FLSA provides that no employer engaged in commerce shall employ a covered

employee for a work week longer than forty (40) hours unless such employee receives

compensation for employment in excess of forty (40) hours at a rate not less than one and

one-half times the regular rate at which he or she is employed, or one and one-half times the

minimum wage, whichever is greater. 29 USC §207(a).

178.   The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207

shall be liable to the employees affected in the amount of their unpaid overtime

compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

179.   Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated

the FLSA.

180.   At all relevant times, Defendants had, and continue to have, a policy of practice of

refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and

Collective Action Members for all hours worked in excess of forty (40) hours per

workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*,

including 29 U.S.C. §§207(a)(1) and 215(a).

181.   The FLSA and supporting regulations required employers to notify employees of

employment law requires employers to notify employment law requirements. 29 C.F.R.

§516.4.

182.   Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

183.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiff and Rule 23 Class]

184.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

185.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

186.   At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one half times the hourly rate the Plaintiff and the class are entitled to.

187.   Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

188.   Defendants' failure to pay Plaintiff were not in good faith.

## COUNT III.
### [Violation of New York Labor Law—Spread of Time Pay
Brought on behalf of Plaintiff and Rule 23 Class]

189.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

190.   The NYLL requires employers to pay an extra hour's pay for every day that an employee

works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et*

*seq.*, and New York State Department of Labor regulations §146-1.6.

191.   Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.


## COUNT IV.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
Brought on behalf of Plaintiff and Rule 23 Class]

192.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

193.   The NYLL requires that employees provide: a noon day meal period of at least thirty (30)

minutes for employees who work a shift of more than six hours extending over the noon day

meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of

at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues

later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the

beginning and end of the shift for employees whose shift lasts more than six hours and starts

between 1 p m. and 6 a.m. NYLL§ 162.

194.   Defendants failed to provide meal periods required by NYLL §162 for every day that

Plaintiff and the Rule 23 class work or worked.

195.   Though the Department of Labor commissioner may permit a shorter time to be fixed for

meal periods than hereinbefore provided, such permit must be in writing and be kept

conspicuously posted in the main entrance of the establishment. No such permit is posted.

196.    Defendants' failure to provide the meal periods required by NYLL §162 was not in good

faith.

## COUNT V.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Rule 23 Class]

197.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

198.    Defendants did not maintain, establish and preserve Plaintiff's weekly payroll records for

a period of not less than six years, as required by NYRR § 146-2.1.

199.    In fact, Defendants required Plaintiff and similarly situated employee to sign paper

stating false hours worked.

200.    As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including

loss of earning, in an amount to be established at trial, liquidated damages, prejudgment

interest, costs and attorneys' fee, pursuant to the state law.

201.    Upon information and belief, Defendants failed to maintain adequate and accurate written

records of actual hours worked and true wages earned by Plaintiff in order to facilitate their

exploitation of Plaintiff's labor.

202.    Defendants' failure to maintain adequate and accurate written records of actual hours

worked and true wages earned by Plaintiff were not in good faith.

## COUNT VI.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Rule 23 Class]

203.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

204.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

205.   Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

206.   Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiff even after the fact.

207.   Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VII.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiff and Rule 23 Class]

208.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

209.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

210.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

211.   Due to Defendants' violations of New York Labor Law, each Plaintiff are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT VIII.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

212.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

213.   26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

214.   Due to Defendants' violations of 26 USC §7434, Plaintiff is entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT IX.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349 Brought on behalf of the Plaintiff]

215.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

216.  NY General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

217.  Due to Defendants' violations of NY GBS Law §349, Plaintiff is entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

218.  Plaintiff demands the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation (See Exhibit 3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the FLSA Collective Plaintiff and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)   Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)   Certification of this case as a collective action pursuant to FLSA;

c)   Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting

them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)      An award of liquidated and/ or punitive damages as a result of Defendants' willful

        failure to overtime compensation, and "spread of hours" premium pursuant to New

        York Labor Law;

k)      An award of costs and expenses of this action together with reasonable attorneys' and

        expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)      The cost and disbursements of this action;

m)      An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety days

        following the issuance of judgment, or ninety days after expiration of the time to

        appeal and no appeal is then pending, whichever is later, the total amount of judgment

        shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary, just,

        and proper.

Dated: Flushing, New York
        July 16, 2015

                                        TROY LAW, PLLC
                                        *Attorney for the Plaintiff, proposed FLSA*
                                        *Collective and Proposed Class Plaintiffs*


                                         /s/ John Troy
                                        John Troy (JT0481)
                                        41-25 Kissena Boulevard Suite 119
                                        Flushing, NY 11355
                                        Tel: (718) 762-1324
                                        Fax: (718) 762-1342
                                        Email: johntroy@troypllc.com