UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUNJIANG JI, on behalf of himself and other similarly situated,

       Plaintiffs,

- against -

JLING INC. d/b/a Showa Hibachi, JANNEN OF AMERICA, INC. d/b/a Showa Hibachi, JOHN ZHONG E HU, and JIA LING HU

       Defendants.

Case No.: 2:15-cv-04194(SIL)

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CLAIMS OF
PLAINTIFF JUNJIANG JI OR IN THE ALTERNATIVE TO STRIKE THE
TESTIMONY OF PLAINTIFF JI AND TO ENFORCE THE SETTLEMENT
AGREEMENT**

HANG & ASSOCIATES, PLLC
136-18 39TH Avenue, Suite 1003
Flushing, NY 11354

**PRELIMINARY STATEMENT AND PROCEDURAL HISTORY**

This action was originally commenced by Plaintiff Junjiang Ji on July 16, 2015. (Docket Doc. 1). The original complaint alleged violations of the Fair Labor Standards Act and New York Labor Law against the corporate defendants Jling, Inc., and Jannen of America, Inc., both doing business as Showa Hibachi, as well as individual defendants John Zhong E Hu and Jia Ling Hu. Id. On March 18, 2016 Decheng Li filed consent to become a party plaintiff. (Docket Doc. 32).

Around November 2016 it was discovered that Plaintiff Ji had left the United States and would not be returning in the near future. By motion dated November 11, 2016 Defendants moved to compel Plaintiff Ji to appear for his deposition either in person or through a professional video deposition. (Docket Doc. 42). At a conference held on December 9, 2016 the Court ordered that Plaintiff Ji will be permitted to appear for his deposition in person, however, he is required to appear for his video deposition at a court reporter service's office, in this case located in Hong Kong. (Docket Doc. 49). Plaintiffs subsequently filed a motion for reconsideration on this exact issue which was summarily denied by the Court. (Docket Doc. 57)

On May 26, 2017 Plaintiff Ji finally appeared for his deposition in Hong Kong using the services of U.S. Legal Support. Through the service provided by U.S. Legal Support, the deposition proceeded smoothly. On October 31, 2017 Plaintiffs filed a motion *in limine* seeking to permit Plaintiffs to submit Ji's deposition testimony in lieu of trial testimony, or in the alternative to allow Plaintiff Ji to testify from mainland China via Skype or some other video based service. (Docket Doc. 69). Defendants opposed Plaintiffs' motion and cross-moved to compel Plaintiff Ji to testify in person at trial. One of the primary reasons for Defendants' opposition is was that Plaintiff Ji's deposition required a substantial amount of time and planning.

By the time Plaintiffs' motion was briefed, Plaintiff had not indicated that they had made any sort of arrangements concerning the setting up of a professional video feed outside of mainland China. Id. Despite this, the Court permitted Plaintiff Ji to testify via video link through a professional service outside of mainland China. (Docket Entry 73).

By Order dated January 3, 2018, the trial which was originally scheduled for January 8, 2018, was adjourned to March 26, 2018. The reason Plaintiff provided for their request to adjourn is because "Plaintiffs are currently arranging with the courtroom technology personal and IT people in Taiwan to set up the video conferencing for the trial, and we need more time to finalize the technical arrangements." (See, Exhibit B) On the eve of trial Plaintiffs again moved to adjourn the trial. This time Plaintiffs stated that an associate from Troy Law who had been working on the case left the firm, and that the associate was responsible for setting up Mr. Ji's deposition in Taiwan. (Docket Doc. 78) Defendants opposed Plaintiffs motion for an adjournment on the basis that Plaintiffs had more than two months from the original trial date to make all necessary arrangements, and because further delay would have caused Defendants substantial hardship. (Docket Doc. 79). The Court agreed and denied Plaintiffs' motion.

Trial commenced on March 26, 2018. Plaintiff Ji appeared by video feed. It was immediately apparent that the video feed was not through a professional service. Both the video and audio quality were very poor which made conducting the trial very difficult for the Defendants and for the Court. When asked where Plaintiff Ji was transmitting his testimony from he stated "Tianjin" which is located in mainland China. (Trial Tr. 42:5). After this was discovered the Court instructed Defendants to continue their cross-examination, and that the issue would be addressed at a later time. (Trial Tr. 42:19-21). Later it was discovered that Plaintiffs' counsel, Mr. Troy, had not provided any of the trial exhibits to Plaintiff Ji. (Trial Tr.

51:10-52:11). This further delayed proceedings as Ji's cross examination was adjourned to the following day to permit time for the trial exhibits to reach Mr. Ji. Meanwhile the improper video feed continuously disrupted the trial even when Ji was not testifying. (Trial Tr. 58:7-19). Before the end of the first day of trial Defendants again expressed their concerns with Plaintiff Ji's testifying from within mainland China. (Trial Tr. 82:7). Namely, that it is a violation of Chinese law to provide *or elicit* testimony from mainland China without a permit. The Court ordered both parties to submit legal arguments regarding this Chinese law. (Trial Tr. 83:21).

The following day Jian Hang, Esq. was in attendance. Mr. Hang actively practiced law in China for more than ten years and was admitted to practice law in China for over twenty years. (Hang Aff. ¶¶ 4-7) Mr. Hang submitted a translation of the Civil Procedure Law of the People's Republic of China. (Exhibit D) When considering that document and the representations of Mr. Hang the Court decided that Mr. Ji should not be permitted to provide further testimony. (Trial Tr. 103:25-104:1). The issue of whether Mr. Ji's testimony should be stricken in its entirety was reserved for post hearing briefs.

Subsequent to these developments the Court encouraged the parties to engage in settlement discussions. The parties negotiated at the trial during recess. Ultimately the parties were able to reach a settlement. (Trial Tr. 131). Unfortunately the court reporter did not include the terms of the settlement on the record. However, at trial the terms of the settlement were discussed and agreed to in open court. On April 13, 2018 Mr. Troy served Defendants' counsel a draft settlement agreement which contain all of the material terms of the settlement. (Exhibit I) The following day on April 14, 2018 Mr. Troy informed Defendants' counsel that his clients were no longer interested in settling the case despite agreeing to the material terms in open court. Id.

By letter motion dated April 18, 2018 Defendants sought to enforce the settlement agreement. The Court held a hearing on June 7, 2018 to discuss this issue. At that hearing the Defendants' motion was dismissed without prejudice. The Court further Ordered Defendants to re-submit the motion in addition to any other relief sought. Accordingly, Defendants submit the present motion to strike the testimony of Plaintiff Ji and to enforce to the settlement agreement.

## ARGUMENT

### *Plaintiff Ji's Claims Should Be Dismissed Or in the Alternative His Trial Testimony Should be Stricken*

Federal Rule of Civil Procedure 41(b) governs the dismissal of an action or claim for a plaintiff's failure to prosecute or comply with a court order. FRCP 41(b) provides, in pertinent part, that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Although FRCP 41(b) does not define what constitutes a "failure to prosecute," the Second Circuit has stated that such failure "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982). In considering whether dismissal is the proper action, courts consider the following factors: (1) the duration of the plaintiff's failure to comply with court orders; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether a defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less drastic than dismissal. See *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir.

2009) (citing *Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004)); *Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001). As a general rule, "no one factor is dispositive." See *Lewis*, 564 F.3d at 576. Dismissals pursuant to FRCP 41 are within the discretion of the court. Id. at 580.

     In this case dismissal of Plaintiff Ji's claims are warranted. First, the issue of Plaintiff Ji testifying in China has been before the Court three separate times. First as part of Defendants' motion to compel, then as Plaintiff's motion for reconsideration, and a third time following the parties' *in limine* motions. For each instance the Court Ordered that Plaintiff Ji must testify from somewhere outside mainland China, either in Taiwan or Hong Kong. Furthermore, Plaintiffs' counsel made numerous blatant misrepresentations to the Court regarding Ji's trial testimony, and sought to intentionally deceive the Court. For instance in Mr. Troy's March 19, 2018 letter requesting an adjournment he acknowledged that "Ji is barred from entering the U.S. soil and Chinese nationals cannot be witnesses in U.S. trials within Chinese territory." (Exhibit B) Mr. Troy further stated that he needed the adjournment because his associate, whom had left the firm, was primarily responsible for handling the arrangements for Ji's video conference feed from Hong Kong or Taiwan. Id.

     The excuse Mr. Troy provided at trial for Ji's failure to testify from Hong Kong or Taiwan is that he attempted to travel to Taiwan did not have the proper visa to enter Taiwan. (Trial Tr. 84:1). This excuse is nonsensical as Ji had already testified from Hong Kong for his deposition without issue. As Mr. Troy had months to prepare for this trial, he should have ensured that Taiwan was a viable option to testify from.

     Moreover, Defendants will certainly be prejudiced if this failure to abide by the Court's order is overlooked. Defendants have already incurred substantial costs and fees for the defense at trial, include the hours of preparation prior to trial. By allowing Ji's claims to survive and to

6

permit him to testify would require Defendants to duplicate those costs, not to mention the substantial amount of time and energy spent at the trial in March 2018.

As for alternative sanctions, at trial the Court precluded Plaintiff Ji from testifying further at trial due to his failure to abide by the Court's previous Order to testify via professional video feed from either Taiwan or Hong Kong. The primary reason for the Court's decision was because it is a violation of Chinese law to offer or elicit testimony from within the People's Republic of China. Defendants produced a translated version of Article 277 of the Civil Procedure Law of the People's Republic of China. Article 277 states: "When requesting or providing coordination in transnational legal proceeding, litigants shall do it in conformity with the international treaty entered into by the People's Republic of China, or through diplomatic approach in absence of a treaty. The embassy and consulate of foreign country are permitted to serve process, conduct investigations, and to obtain evidence from its own nationals, but shall not violate the law of People's Republic of China or a compulsory measure. *Except for what is described in the forgoing provisions, no foreign authority or individual is allowed to serve process, conduct investigation, or obtain evidence within the borders of People's Republic of China without permission from the authority of the People's Republic of China.*" (Exhibit D)

Thus, by violating the Court's previous instructions and testifying from mainland China Plaintiff was causing attorneys for Defendants to violate the laws of the People's Republic of China. The Court already forbade Plaintiff Ji from offering any further testimony. The Court further instructed Defendants to submit provisions describing the penalties for violating these laws.

Article 15 on the Regulations on the Administration of Foreign Law Firms' Representatives Offices in China provide that the unauthorized provision of legal services

7

subject such foreign attorneys to a fine of between RMB50,000 to RMB300,000, which at current exchange rates is approximately $7,500 to $45,300. (Exhibit E) Furthermore, Article 81 of the Exit and Entry Administration Law of the People's Republic of China provides that individuals who violate Chinese law makes them no longer eligible to enter stay or reside in China. (Exhibit G) Finally Article 13 of the Criminal Law of China states that violations of the laws of China can subject to violator to punishment according to law. (Exhibit H) Notwithstanding the above, additional penalties for such violations are at the discretion of the assigned judge, and can include imprisonment. (Hang Aff. 16) Thus, because of Plaintiff Ji's willful violation of the Court's directive Defendants' counsel would be subject to fines, denial of entry into China, or even imprisonment.

Thus, for the reasons set forth above, Defendants respectfully request that the Court dismiss the claims of Plaintiff Ji pursuant to FRCP 41, or in the alternative to preclude Plaintiff Ji from testifying and to strike all testimony already provided.

### *The Settlement Reached at Trial is Enforceable*

An alternative to the above relief being sought is that the Court enforce the settlement agreement that was reached in open court at trial.

A district court has the power, and indeed the duty, to enforce summarily, on motion, a settlement agreement reached in a case before it. *See*, e.g. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) ("[T]he district court had not only the power but the duty to enforce a settlement agreement which it had approved.") Moreover it is well settled that "[p]arties can enter into binding oral agreements." *Figueroa v. City of New York*, No. 05-cv-9594, 2011 U.S. Dist LEXIS 9433, 2011 WL 309061, at *3 (S.D.N.Y. Feb. 1, 2011) (citing *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). "Where the parties

8

intend to be bound, an oral statement of a litigation is binding even if a party later changes his or her mind." Id. (citing *Powell v. Omnicom,* 497 F.3d 124, 129-30 (2d Cir. 2007).

The Second Circuit has set forth several factors to be considered in determining whether parties intended to be bound by an agreement in the absence of a document executed by both sides: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston*, 777 F.2d at 80.

The facts in this case militate towards enforcing the settlement agreement. The parties never made any express reservation not to be bound in the absence of writing. The parties partially performed by adjourning the ongoing trial, and by Mr. Troy delivering me all of the formal paperwork. *See, e.g. Wesley v. Corr Officer Badge No. 9417*, 2008 U.S. Dist LEXIS 2, 2008 WL 41129 at *3 (S.D.N.Y. Jan. 2, 2008) "[T]here was partial performance of the settlement agreement. Counsel for Defendants had prepared and finalized all of the necessary paperwork and mailed them to Plaintiff for his signature.") Moreover, all material terms of the settlement were agreed to and set forth on the record before the Court. Finally, the agreement was made in open court, and further the settlement was made in the presence of, facilitated by and approved by the Court. *Id* (noting that settlement agreements do not necessarily need to be committed to writing to be enforced when made in open court or with close court supervision.)

In this case Plaintiffs' conduct is especially egregious. The settlement was reached during the trial. The parties negotiated, and everyone, including both Plaintiffs were in agreement. The parties then set forth the settlement on the record in open court. Plaintiffs now seek to get out of the settlement, for what can only be presumed for tactical or strategic purposes.

9

They essentially are seeking a second bite of the apple by forcing a continuation of the trial, and hoping to obtain a more favorable decision regarding Plaintiff Ji's testimony. That Plaintiffs used the guise of settlement in furtherance of these objections is particularly unacceptable. Therefore Plaintiffs should be compelled to abide by the terms of the settlement already agreed to, and memorialized in the draft agreement prepared by Mr. Troy. The alternative would be a result that is patently unfair to Defendants.

### *Plaintiffs' Counsel Should Be Subject to Sanctions*

Plaintiffs' counsel, John Troy, has throughout this case demonstrated an overall recalcitrance towards the Federal Rules, this Court's directives and rules of practice. This has culminated in Mr. Troy intentionally disobeying the Court's long standing instruction that Plaintiff Ji must testify by video feed in either Hong Kong or Taiwan, then in bad faith backing out of a settlement that was reached with the full consent of all parties. This has resulted in substantial delays to these proceedings, which should by this time have been closed, and costs to the Defendants in attempting to now enforce the agreement. 28 U.S.C. § 1927 confers the courts with authority to sanction an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." Furthermore, the court may order the imposition of sanctions pursuant to its inherent powers.

In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999). Here Plaintiff had no colorable basis to oppose the settlement that was reached, and such opposition was motivated by bad faith.

As such Defendants request that sanctions be issued against Mr. Troy and his firm for the cost of briefing this motion. In the alternative Mr. Troy suggested in his opposition to the first motion to enforce this agreement that the settlement amount was insufficient to satisfy the requirements under *Cheeks v. Waffle House, Inc.* An alternative sanction could be that the Court enforce the settlement agreement, yet preclude Mr. Troy from receiving costs or attorney's fees from the settlement. This would have the dual purpose of sanctioning Mr. Troy for his conduct during this case and to increase the relative amounts the plaintiffs receive as part of the settlement.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully requests that this Court dismiss the claims of Plaintiff Ji or in the alternative strike his trial testimony, or enforce the settlement agreement reach at trial.

Dated: June 28, 2019
Flushing, New York

               ___/s/ *Jian Hang*_____
               Jian Hang, Esq.
               Hang & Associates, PLLC
               136-20 38th Avenue, Suite 10G
               Flushing, NY 11354
               (718) 353-8588