UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
JUNJIANG JI and DECHENG LI on behalf
of themselves and others similarly situated,

                                                     15-CV-4194 (SIL)

                         Plaintiffs,

              -against-                       **MEMORANDUM
                                                       <u>AND ORDER</u>**

JLING INC. d/b/a Showa Hibachi, JANNEN
OF AMERICA, INC. d/b/a Showa Hibachi,
JOHN ZHONG E HU, JIA LING HU, and
JIA WANG HU,

                         Defendants.
--------------------------------------------------------------X

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq*., is a motion filed by Defendants Jling Inc. d/b/a Showa Hibachi, Jannen of America, Inc. d/b/a Showa Hibachi, John Zhong E Hu, Jia Ling Hu and Jia Wang Hu (collectively, "Defendants") seeking an order: (i) dismissing Plaintiff Junjiang Ji's ("Ji") claims pursuant to Rule 41(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); or alternatively (ii) striking Ji's testimony; or alternatively (iii) enforcing the settlement agreement reached at trial; and (iv) sanctioning counsel for Plaintiffs Ji and Dechang Li ("Li" and together with Ji, "Plaintiffs"), Troy Law, PLLC, for failure to comply with the Federal Rules of Civil Procedure and this Court's directives. *See* Docket Entry ("DE") [86]. For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. BACKGROUND

### A. <u>Relevant Facts</u>

Plaintiffs were employed as cooks in the kitchen of a restaurant, Showa Hibachi, located in Wantagh, New York.  *See* Proposed Pretrial Order, DE [62], at 4. The corporate Defendants, Jling Inc. and Jannen of America, Inc., operated Showa Hibachi during the relevant time period.  *See id.*  The individual Defendants are affiliated with the corporate Defendants in various capacities.  *See id* at 5.

### B. <u>Procedural History</u>

By Complaint dated July 16, 2015, Ji, on behalf of himself and others similarly situated, commenced this wage and hour action against Jling Inc., Jannen of America, Inc., John Zhong E Hu and Jia Ling Hu alleging violations of the FLSA and NYLL.  *See* DE [1].  Following an initial conference on November 9, 2015, this Court entered a Scheduling Order setting various litigation deadlines.  *See* DE [20].

In accordance with a briefing schedule set by the Honorable Joan M. Azrack, *see* DE [24], Ji filed a fully-briefed motion for conditional certification of his FLSA claims on February 18, 2016.  *See* DEs [27]-[31].  Judge Azrack subsequently referred Ji's motion to this Court for decision on February 22, 2016.  *See* Electronic Order dated February 22, 2016.  On March 13, 2016, Li filed a "Consent to Become Party Plaintiff."  *See* DE [32].  By Memorandum and Order dated May 19, 2016, this Court denied the motion for conditional certification.  *See* DE [33].  On July 22, 2016, this Court entered an Amended Scheduling Order extending the deadlines set forth in the original Scheduling Order.  *See* DE [38].  Several months later, the

Court granted Plaintiffs' application for a further extension of, *inter alia*, the deadline to complete depositions. *See* Electronic Order dated September 22, 2016.

On November 11, 2016, Defendants filed a letter motion explaining:

> At this time the depositions of the Defendants are now complete. The attorneys for the parties discussed possible dates for the depositions of the Plaintiffs. Further, the parties agreed [upon] November 16, 2016 to conduct Plaintiffs' depositions, two days before the expiration of the discovery deadline. However, on November 10, 2016[,] Plaintiffs' counsel contacted me by email to inform me that Mr. Ji had left the country and now permanently resides in China. Moreover, he stated that Mr. Ji would not be coming back to the United State[s] anytime soon, and that in order to depose him, we would need to do a video deposition. Defendants oppose Plaintiffs' request that Mr. Ji's deposition be taken remotely.

DE [42] at 1. Defendants therefore requested an order compelling Plaintiff to appear for an in-person deposition or, alternatively, requiring Plaintiffs to bear the expenses associated with conducting a remote video deposition. *See id.* at 1-2. On November 16, 2016, Plaintiffs moved for leave to file an Amended Complaint: (i) adding Li as a party plaintiff; and (ii) adding Jia Wang Hu as a party defendant. *See* DEs [43]-[45]. Two days later, on November 18, 2016, rather than submitting opposition to Defendants' motion to compel, Plaintiffs filed a separate motion for a protective order requesting leave to conduct Ji's deposition by videoconference. *See* DE [46]. Defendants then filed opposition to Plaintiffs' motion for leave to amend on November 30, 2016. *See* DE [47].

At a motion hearing on December 9, 2016, this Court granted in part and denied in part both Defendants' motion to compel and Plaintiffs' motion for a protective order. *See* DE [49]. In so ruling, the Court permitted Ji's deposition to

proceed by videoconference but ordered Ji to appear at the office of Defendants'
court reporter nearest Ji's home in China.  *See id.*  The Court also granted
Plaintiffs' motion for leave to amend, and set new deadlines including a January 13,
2017 deadline for Ji's deposition.  *See id.*  Defendants then designated Hong Kong
as the location of the deposition because it was the closest location to Ji's home
where the deposition could be conducted lawfully, for reasons discussed more fully
below.

On December 23, 2016, Plaintiffs moved for reconsideration of the Court's
December 9, 2016 ruling as it pertained to the logistics of Ji's deposition.  *See* DE
[53].  In their letter motion, Plaintiffs explained that, absent the consent of the
Chinese government, Chinese law precluded a United States lawyer from deposing
a Chinese citizen within the country's borders, but nevertheless argued that,
"[b]ecause of Plaintiff Ji's current circumstances, it [was] practically impossible for
him to be deposed [in Hong Kong] as ordered by the Court."  *Id.* at 1.  Consequently,
Plaintiffs requested permission for Ji to appear for his deposition at his residence in
China—despite the Chinese law prohibiting such a deposition—as well as an
extension until March 13, 2017, of the deadline to take Ji's deposition.  *See id.* at 1-
2.  On January 27, 2017, Plaintiffs filed a letter "supplement" to their motion for
reconsideration in which they explained that Ji had obtained a permit from the
Chinese government to travel to Hong Kong for his deposition, but that the costs Ji
would incur in complying with the Court's order would amount to an "undue
hardship."  *See* DE [54].  Accordingly, Plaintiffs again requested permission for Ji's

deposition to take place by video conference from his residence "through a service such as Skype or WeChat . . . ." *Id.* On January 31, 2017, Defendants opposed Plaintiffs' motion for reconsideration on the additional basis that the proposed arrangement for Ji's deposition would likely violate Chinese law. *See* DE [55] at 2. On March 20, 2017, this Court denied Plaintiffs' motion for reconsideration and directed Ji's deposition to proceed, as previously ordered, on or before April 30, 2017. *See* DE [57]. According to Defendants, Ji ultimately appeared for his deposition in Hong Kong on May 26, 2017. *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Claims of Plaintiff Junjiang Ji or in the Alternative to Strike the Testimony of Plaintiff Ji and to Enforce the Settlement Agreement ("Defs.' Mem."), DE [86-1], at 2.

On October 16, 2017, the parties filed a signed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, which Judge Azrack So Ordered the following day. *See* DEs [66], [68]. Also on October 17, 2017, this Court set a bench trial for January 8, 2018. *See* DE [67].

On October 31, 2017, Plaintiffs filed a motion *in limine* seeking leave to submit Ji's deposition transcripts *in lieu* of live testimony at trial or, alternatively, to allow him to testify by videoconference from China. *See* DEs [69]-[71]. In support of their motion, Plaintiffs relied on the fact that "Ji [was] not able to legally enter the United States." *See* DE [71] at 3. Defendants opposed Plaintiffs' motion claiming that Ji procured his own absence from the United States and that Plaintiffs have not demonstrated good cause or compelling circumstances to

overcome the general rule that testimony must be given in open court. *See* DE [72] at 2-5. Further, Defendants noted that a video conference would "be very complicated," would "likely delay proceedings unnecessarily," and would need to be conducted at a location outside of China due to governmental restrictions. *Id.* at 5.

By Memorandum and Order dated December 19, 2017, this Court granted the motion insofar as Plaintiffs sought permission for Ji to testify at trial by video link and denied as moot the request to submit deposition transcripts at trial *in lieu* of live testimony. *See* DE [73]. The Court also directed Plaintiffs to make "whatever arrangements [were] necessary for the remote testimony including covering whatever costs are incurred." *Id.* at 8. In addition, "as procedural safeguards during [the] testimony," the Court instructed Ji to: (i) "be alone at his remote location with the exception of a videographer"; and (ii) "not communicate with anyone about his testimony during such time as he is testifying." *Id.*

On January 2, 2018, Plaintiffs, with Defendants' consent, requested an adjournment of the January 8, 2018 trial date because they were "currently arranging with the courtroom technology personal [*sic*] and IT people in Taiwan to set up the video conferencing for the trial, and . . . need[ed] more time to finalize the technical arrangement [*sic*]." DE [76]. The following day, this Court granted Plaintiffs' request and rescheduled the bench trial for March 26, 2018. *See* Electronic Order dated January 3, 2018.

On February 28, 2018, Plaintiffs filed a motion for their attorney Kibum Byun ("Byun") to withdraw as counsel. *See* DE [77]. In their motion, Plaintiffs

represented that "Troy Law, PLLC [where Byun was employed] will continue to represent Plaintiffs in this matter, and no party will be prejudiced if this motion is granted." *Id.* This Court granted the motion to withdraw, without opposition, on March 6, 2018. *See* Electronic Order dated March 6, 2018. Shortly thereafter, on March 19, 2018, Plaintiffs requested an additional adjournment of the trial date, this time without the consent of Defendants. *See* DE [78]. Plaintiffs' letter motion stated:

> On February 28, 2018, attorney Kibum Byun had asked for leave to withdraw from this matter because he was temporarily absent from the firm for health-related issues. Mr. Byun had been the primary attorney handling the case, including the technological equipment and arrangement necessary for video conferencing lead Plaintiff Junjiang Ji from overseas in Hong Kong/Taiwan, as Ji is barred from entering the U.S. soil and Chinese nationals cannot be witnesses in U.S. trials within Chinese territory.

> Without Mr. Byun, this office, which for now has only Mr. Troy and Aaron Schweitzer (who is admitted in New Jersey, pending New York), needs some time in order to make arrangements complementary to Ji's extraordinary circumstances and to take over Byun's case to make the trial experience what our clients, who had been down-trodden for the best majority of their life, the best possible. Unfortunately, since Mr. Byun's departure our schedule, which had been put together on [*sic*] the anticipation that we would have three attorneys available, has had to be covered by two, so time has been limited.

*Id.* Defendants opposed Plaintiffs' motion, arguing that the request was unjustified and that any further delay would cause substantial hardship to Defendants. *See* DE [79]. By Electronic Order dated March 21, 2018, this Court denied Plaintiffs' motion.

The bench trial in this matter commenced on March 26, 2018. *See* DE [81]. Following brief opening statements, Plaintiffs called Ji as their first witness and his

direct examination began. *See* Transcript of Trial Before the Honorable Steven I. Locke ("Tr."), DEs [86-3], [86-4], 7:12-17. Ji appeared by video. *See id.* According to Defendants, "[i]t was immediately apparent that the video feed was not through a professional service. Both the video and audio quality were very poor which made conducting the trial very difficult for the Defendants and for the Court." Defs.' Mem. at 3.

During cross-examination, when asked where he was physically located, Ji stated that he was in Tianjin, China. *See* Tr. 42:4-7. Following Ji's testimony, counsel for Defendants noted on the record that Ji's conduct, *i.e.*, testifying from mainland China, violated both this Court's prior order and Chinese law. *See id.*, 42:8-18. In response, this Court instructed counsel to continue Ji's cross-examination and indicated that the issue would be dealt with in due course. *See id.*, 42:19-21.

Later in the cross-examination, however, it also became apparent that Ji was not in possession of Defendants' exhibits, all of which had been provided to Plaintiffs' counsel several months before the trial:

> THE COURT: [The exhibits were] given to you months ago and you asked that your client . . . do it by video rather than come into court. D[id] you think your client wouldn't need a copy of this?
>
> MR TROY [Plaintiffs' counsel]: We thought we could do it through the video.

*Id.*, 52:4-9. Moreover, Plaintiffs' counsel objected to Defendants' counsel using these exhibits during cross-examination on the basis that they were not in his client's possession. *See id.*, 52:15-16. Upon learning of these developments, the Court

suspended Ji's cross-examination and instructed Plaintiffs' counsel to immediately send Ji a copy of Defendants' exhibits. *See id.*, 52:19-53:1. Direct examination of co-Plaintiff Li, who was present in court, then commenced. *See id.*, 55:3.

Near the conclusion of the first day of trial, Defendants again expressed "concern[ ] about the way that the teleconference [with Ji was] being conducted." *Id.*, 82:7-8. Specifically, Defendants' counsel explained:

> I understand there are laws in China regarding the transmission of testimony in foreign jurisdictions in proceedings. I know there are criminal penalties for everyone involved in the proceedings. I know I myself traveled to China a number of times and I don't want to be implicated in any illegal activities. We're trying to look up to find the exact statute that says that is improper.

*Id.*, 82:9-16. In response, Plaintiffs' counsel stated that they "did arrange [for] Mr. Ji to come to Taiwan . . . [but] before he boarded on the airplane to Taipei, he was stopped. The reason why, he need a special permit from China to Taiwan." *Id.*, 82:23-83:2. Plaintiffs' counsel also indicated that he "[didn]'t know" whether it was it was lawful for Ji to testify from mainland China. *Id.*, 82:20. As a result of this exchange, the Court directed the parties to research the question and submit an answer to the Court by the following morning. *See id.*, 83:21-22.

In accordance with the Court's instructions, Plaintiffs filed a letter in which they asserted that Ji did not violate Chinese law by testifying from mainland China, claiming that "[t]he Chinese law is not applicable because the officer . . . administering Mr. Ji's oath are [*sic*] in the United States, not in China, and not by the foreign attorney and/or consular officials in China, but by the court officer of USDC in United States." DE [80] at 1. Yet, in their letter, Plaintiffs conceded that

"China regards the administering of oaths by foreign attorneys and consular officials as a violation of China's judicial sovereignty" and, consequently, "[w]hen foreign attorneys or consular officials administer an unauthorized oath *in China*, the penalties may include arrest, detention, expulsion, or deportation of all participants in the oath." *Id.* at 1 (emphasis in original).

Jian Hang ("Hang"), an attorney admitted to practice law in New York who had also been licensed to practice law in China for approximately 20 years, appeared at trial on March 27, 2018, on Defendants' behalf. *See* Tr. 87:14, 89:9-22. At the outset, Hang stated that another attorney from his office—Rui Ma ("Ma"), who was fluent in both English and Chinese and was admitted to practice law in New York—prepared a translation of the applicable provisions of the Civil Procedure Law of the People's Republic of China (the "Chinese Civil Law") and other Chinese laws and regulations. *See* Tr. 87:22-25; 88:18-21; *see also* DEs [86-7]-[86-11] (applicable provisions). Hang then proceeded to read Article 277 of the Chinese Civil Law on the record:

> When requesting or providing coordination in transnational legal proceeding[s], litigants shall do it in conformity with the international treaty entered into by the People's Republic of China, or through diplomatic approach in [the] absence of a treaty. The embassy and consulate of a foreign country are permitted to serve process, conduct investigations, and to obtain evidence from its own nationals, but shall not violate the law of People's Republic of China or a compulsory measure.
>
> Except for what is described in the forgoing provisions, no foreign authority or individual is allowed to serve process, conduct investigation, or obtain evidence within the borders of People's Republic of China without permission from the authority of the People's Republic of China.

Tr. 90:13-91:5 (quoting the Chinese Civil Law, Article 277). Hang explained:

> So basically the [last] paragraph says without getting the authority or permission from People's Republic of China, a foreign power, for example, or individual, like the court or attorneys, for attorneys, like [United States] attorneys or foreign individuals and common people cannot conduct proceedings which is [*sic*] part of evidence within the border of the People's Republic of China.
>
> That means if the people or witness sitting in the border of the People's Republic of China, the foreign authority or foreign individual cannot take deposition from them or take testimony from them because they are in China, they are China nationals; the legal authority of China; you cannot violate that legal authority. If you violate that law, the penalties could be arrest or detention of attorneys or individuals or participants, including the witness sitting here. He could be arrested or penal[ized] for [the] violation . . . .

*Id.*, 91:6-22.

In response to Defendants' arguments, Plaintiffs' counsel essentially reiterated the points raised in their letter to the Court:

> I don't think United States judicial or maybe United States legal system and organized laws kind of law because that's our territory. How can the judicial system . . . be limited under the sovereign, should be limited to the party we read about[.] I believe our papers said clearly it's only limited to one process, one, if you're an attorney in China and if you are administering an oath or if you are consulate. You are consulate, you, too, are authorized. If you are consulate, of course you can [ad]minister an oath in American Embassy because that's . . . within the territory of [the] United States.

*Id.*, 97:12-23.

In reply to Plaintiffs' counsels' statements, Hang concluded:

> The law clearly says you cannot conduct investigation or evidence within the border of the People's Republic of China because the witness is in China so the evidence is from China. Every information coming within the border of China.

So that's the law. You cannot do that even by today's technology. You can do in [the United States]. You can do it in Hong Kong. And you can do it in Taiwan. But if the witness [is] in China, they [*sic*] have to come from China, so if you understand the law, that's what the law says.

*Id.*, 98:13-23.

After considering the parties' arguments, this Court precluded Ji from testifying further and struck his testimony, but indicated that arguments pertaining to this ruling could be raised post trial:

First, I am ordering Mr. Hang to produce th[e] section about penalties that relates to a violation of this. The only authority I have before me is [Section] 277 of the Civil Procedure Law of the People's Republic of China, the revision dated 2017, effective today and translated from . . . Chinese into English; [and] Mr. Hang is the only attorney or person in this courtroom who has practiced law in China, and I believe he practiced for 20 years.

My reading of the statute is that conducting the proceedings in this present form is a violation of Chinese law, which exposes not only the [P]laintiff to legal sanctions—and I would submit that is up to him— but also defense counsel, who I am told conducts business in China regularly. Therefore, I am not going to permit Mr. Ji to testify in this [manner].

\* \* \*

[Defendants'] motion is granted, for the reasons I have just explained. The testimony of Mr. Ji is stricken as being violative of Chinese law as explained to me on the record by Mr. Hang, again the only attorney in the room who has practiced law in China, for 20 years. I accept his representation with respect to the law.

If in the post[-]trial briefing this argument should be raised, and, Mr. Troy, you come up with other arguments, I will consider reopening or reviving testimony, as appropriate. But as it stands now, we are not going to take any more testimony from Mr. Ji, and his testimony is stricken.

> Everybody's rights are reserved until we have a written decision in this case.

*See* Tr. 103:4-18; 105:7-20.

Following the colloquy summarized above, trial proceeded with the continued cross-examination of Li. *See* Tr. 108:3-4. At the conclusion of Li's cross-examination, however, the parties engaged in settlement discussions with the assistance of this Court and ultimately reached a settlement. *See* Tr. 131:8; DE [82]. The terms of the parties' settlement agreement were discussed in open court, and a proposed written agreement was ultimately prepared by Defendants. Defendants transmitted the draft agreement to Plaintiffs' counsel via email on April 13, 2018. *See* DE [86-12]. In a reply email the following day, counsel for Plaintiffs advised that their clients were no longer willing to sign the agreement. *See id.*

On April 18, 2018, Defendants filed a letter motion to enforce the terms of the settlement agreement, which Plaintiffs opposed on June 6, 2018. *See* DEs [83], [84]. At a hearing on June 7, 2018, this Court denied Defendants' letter motion without prejudice and with leave to renew by formal motion, together with any other applications, and set a briefing schedule. *See* DE [85]. Defendants subsequently filed the instant motion on June 28, 2018. *See* DE [86]. Plaintiffs filed opposition to the motion on July 30, 2018, and Defendants submitted a reply thereto on August 22, 2018. *See* DEs [90], [91].

## II. LEGAL STANDARDS

### A. <u>Fed. R. Civ. P. 41(b)</u>

Initially, Defendants move to dismiss Ji's claims pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. Rule 41(b) authorizes the district court to dismiss a complaint "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b); s*ee LeSane v. Hall's Sec. Analyst. Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) ("[I]t is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute."). To evaluate whether dismissal for failure to prosecute is proper, courts consider the following factors:

> (1) the duration of [the] plaintiff's failure to comply with court orders; (2) whether [the] plaintiff was on notice that failure to comply would result in dismissal; (3) whether [the] defendant is likely to be prejudiced by further delay in the proceedings; (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction less dramatic than dismissal.

*Green v. Rodgers*, 15-cv-2260, 2017 WL 1208746, at *6 (E.D.N.Y. Mar. 15, 2017) (citing *Davis v. Town of Hempstead*, 597 F. App'x. 31, 32 (2d Cir. 2015)), *report and recommendation adopted*, 2017 WL 1216524 (E.D.N.Y. Mar. 31, 2017); *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014). "The court should consider the foregoing factors in light of the record of the entire case as a whole, and no one factor is dispositive." *Bos. Heart Diagnostics Corp. v. Med. Diagnostic Labs., L.L.C.*, No. 17-cv-4514, 2018 WL 1786987, at *3 (E.D.N.Y. Apr. 2, 2018) (citation omitted). The Second Circuit has cautioned, however, that "dismissal for lack of prosecution is

a harsh remedy that should be utilized only in extreme situations." *Lewis v. Rawson*, 564 F.3d 569, 575-76 (2d Cir. 2009).

**B. <u>Enforcement of a Settlement Agreement</u>**

Alternatively, Defendants seek to enforce the parties' settlement agreement reached in court. The Second Circuit has articulated four factors for courts to consider in determining whether to enforce an oral settlement agreement: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80-81 (2d Cir. 1985) (citation omitted).[1] "No single factor is decisive, but each provides significant guidance." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 323 (2d Cir. 1997).

**C. <u>Sanctions</u>**

Defendants further ask the Court to impose sanctions under 28 U.S.C. § 1927 and pursuant to the Court's inherent power against Plaintiffs' counsel, Troy Law, PLLC.

**1. 28 U.S.C. § 1927**

28 U.S.C. § 1927 provides:

---

[1] Although "[t]he Second Circuit has declined to rule whether courts should apply federal or state law in determining the enforceability of settlement agreements . . . , the Circuit has stated that New York and federal law on enforcing settlements are 'materially indistinguishable.'" *Velazquez v. Yoh Servs., LLC*, No. 17-cv-842, 2017 WL 4404470, at *2 (S.D.N.Y. Sept. 25, 2017) (citation omitted). Thus, this Court need not address the substance or applicability of New York law in this regard.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.* "By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1274 (2d Cir. 1986)). "Bad faith is the touchstone of an award under this statute." *Id.* (citing *McMahon v. Shearson/Am. Exp., Inc.*, 896 F.2d 17, 21 (2d Cir. 1990)). Accordingly, "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri*, 803 F.2d at 1273.

2. Inherent Power Sanctions

The Court also "has the inherent power to sanction for improper conduct, which derives from 'the very nature of courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Steimel v. Inc. Vill. of Rockville Ctr.*, 965 F. Supp. 366, 374 (E.D.N.Y. 1997) (quoting *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1345 (2d Cir. 1991)). "A court may . . . sanction a litigant pursuant to its inherent authority if there is clear evidence that the . . . conduct [in question] was (1) entirely without color and (2) motivated by improper

purposes." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 56 (2d Cir. 2018) (citation and internal quotation marks omitted), *cert. denied sub nom.*, No. 18-991, 2019 WL 888149 (U.S. Feb. 25, 2019). In addition, "the imposition of sanctions pursuant to . . . the Court's inherent power[ ] requires a finding of bad faith." *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, No. 16-cv-4762, 2019 WL 111042, at *3 (S.D.N.Y. Jan. 4, 2019) (citation omitted). "Conduct is entirely without color when it lacks any legal or factual basis; it is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the attorney whose conduct is at issue." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Bad faith may be inferred "when a party undertakes frivolous actions that are 'completely without merit.'" *Huebner*, 897 F.3d at 55 (quoting *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000)). "A finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of specificity in the factual findings." *Id.* In deciding whether to issue sanctions pursuant to its inherent power, the Court has broad discretion. *See United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018).

## III. DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, the Court grants Defendants' motion to strike Ji's testimony and for sanctions against Plaintiffs' counsel, but denies their motion to dismiss and to enforce the settlement agreement.

## A. <u>Motion to Dismiss Ji's Claims Pursuant to Fed. R. Civ. P. 41(b)</u>

In arguing for dismissal of Ji's claims under Fed. R. Civ. P. 41(b), Defendants rely on Ji's failure to meaningfully appear to testify at trial and the related delays leading up to trial, all stemming from the fact that Ji was physically located in mainland China during the pendency of this action. *See* Defs.' Mem. at 6-8. Plaintiffs, by contrast, assert that Defendants' motion should be denied because Ji has not failed to prosecute his claims. *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Claims of Plaintiff Junjiang Ji or in the Alternative to Strike the Testimony of Plaintiff Ji and to Enforce the Settlement Agreement ("Pls.' Opp."), DE [90], at 2. The Court analyzes each factor of the test outlined above in turn below and concludes that dismissal of Ji's claims is unwarranted at this juncture.

### 1. Duration of Ji's Failure to Prosecute

"The first factor to be examined breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *Akman v. Pep Boys Manny Moe & Jack of Delaware, Inc.*, No. 11-cv-3252, 2013 WL 2237542, at *4 (E.D.N.Y. May 21, 2013). Here, as it cannot be disputed that the alleged failure to prosecute was caused by Plaintiffs, the Court analyzes the latter issue only. Defendants urge the Court to consider, for the purpose of this factor: (i) Ji's decision to return to China; (ii) the delays associated with Ji's deposition and trial testimony; and (iii) Plaintiffs' change of course with respect to settlement. *See* Defendants' Reply Memorandum of Law in

Further Support of Defendants' Motion to Dismiss the Claims of Plaintiff Junjiang Ji or in the Alternative to Strike the Testimony of Plaintiff Ji and to Enforce the Settlement Agreement ("Defs.' Reply"), DE [91], at 5. The Court agrees with Defendants that Plaintiffs were responsible for numerous delays throughout the pendency of this case. For instance, Ji's deposition was initially scheduled for November 10, 2016, but did not take place until May 26, 2017. In addition, the trial in this matter began on March 26, 2018, and the case remains unresolved. However, there has been no single period of substantial delay that can be attributed solely to Plaintiffs. Accordingly, this factor weighs only slightly in Defendants' favor.

2. Notice to Ji

With respect to the second factor, Defendants contend that "Plaintiff was fully aware of the conditions necessary to testify at trial, and for the importance of testimony at trial" and, therefore, "had de-facto notice of potential dismissal." Defs.' Reply at 6. The Court disagrees. Although Plaintiffs were aware that Ji was not permitted to testify by video while located in mainland China, Plaintiffs were not warned prior to trial—by either the Court or Defendants—that doing so could result in a dismissal of Ji's claims. Accordingly, this factor weighs against dismissal. *See Gone v. Wackenhut Servs., Inc.*, No. 10-cv-2495, 2011 WL 2610550, at *4 (S.D.N.Y. June 17, 2011) ("[T]he Second Circuit has previously suggested that dismissal with a complete lack of notice would impute due process concerns that hedge strongly

against such a dismissal." (citing *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982)).

### 3. Prejudice to Defendants

Turning to the third factor, Defendants allege that they will be prejudiced by virtue of having "already incurred substantial costs and fees for the defense at trial, including the hours of preparation prior to trial" and having to duplicate those efforts in preparation for an additional trial. *See* Defs.' Mem. at 6-7. Because, as explained below, the Court is precluding Ji from further testifying remotely and awarding Defendants attorneys' fees and costs in connection with the trial, any prejudice has been ameliorated. Further, the Court does not consider Plaintiffs' delays so unreasonable such that prejudice may be presumed. *See, e.g.*, *Thompson v. Rising Star Beauty Salon Inc.*, No. 15-cv-3716, 2017 WL 3887870, at *2 (E.D.N.Y. Sept. 5, 2017) (prejudice presumed where the plaintiff failed to comply with court order for over six months). This factor therefore weighs against dismissal.

### 4. Docket Management

In deciding the fourth factor, "the Court must strike a balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard. The efficient administration of justice requires that a court effectively manage its docket, guaranteeing that its cases progress with appropriate speed." *Gayvoronskaya v. Americare, Inc.*, No. 15-cv-6641, 2019 WL 1352681, at *8 (E.D.N.Y. Feb. 19, 2019) (citation and internal quotation marks omitted). The instant case was filed in 2015, and the Court has spent significant time addressing

motions involving Ji's requests to participate in this litigation remotely. By permitting Ji to testify by videoconference both at his deposition and at trial, the Court certainly afforded him the opportunity to be heard. Particularly considering this Court's familiarity with the rate at which other comparable cases typically progress in this district, this factor weighs in favor of dismissal.

### 5. Sufficiency of Lesser Sanctions

Finally, the fifth factor, whether this Court has adequately considered a sanction less dramatic than dismissal, weighs heavily against dismissal. The sanction of dismissal "is pungent, rarely used, and conclusive . . . [,] and [a] district judge should employ it only when he is sure of the impotence of lesser sanctions." *Lerner v. Fleet Bank, N.A.*, No. 98-cv-7778, 2008 WL 2844648, at *5 (E.D.N.Y. July 22, 2008) (citation and quotation marks omitted), *order corrected*, 2009 WL 2252880 (E.D.N.Y. July 28, 2009). As explained herein, the Court is imposing sanctions against Plaintiffs and their counsel by: (i) striking Ji's trial testimony and precluding him from further testifying remotely in this matter; and (ii) awarding Defendants' attorneys' fees and costs associated with the trial and the instant motion. The Court deems these sanctions sufficient for purposes of admonishing Plaintiffs and their counsel for their conduct and deterring such behavior in the future. *See Fossil Indus., Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 292 (E.D.N.Y. 2014) (finding an award of attorneys' fees and costs an adequate alternative sanction to dismissal under Fed. R. Civ. P. 41(b)).

Accordingly, with the balance of applicable factors weighing against dismissal, the Court denies Defendants' motion to dismiss Ji's claims under Fed. R. Civ. P. 41(b).[2]

## B. <u>Motion to Strike Ji's Testimony</u>

Notwithstanding its determination with respect to Defendants' request for dismissal, the Court confirms its prior conclusion that Ji's testimony should be stricken. *See* DE [82]. As set forth in detail above, Defendants established during trial that, by testifying via video link while located in mainland China, Ji violated Chinese law. *See* pp. 9-13, *supra*; Tr. 87:6-93:25 (in court statements of Hang). Additionally, in support of the instant motion, Defendants have submitted the Affirmation of Jian Hang (the "Hang Affirmation"), *see* DE [86-2], as well as various applicable Chinese laws and regulations translated to English, DEs [86-8]-[86-11], which collectively reinforce this Court's conclusion at trial that the manner in which Ji testified was unlawful under Chinese law and, further, establish the potential penalties associated with those provisions.

As a preliminary matter, in his Affirmation, Hang adequately establishes his qualification to opine on issues relating to Chinese law, declaring that he: (i) was admitted to practice law in China from August 1998 through October 2017; (ii) actually practiced law in China for over ten years; and (iii) is familiar with the laws

_____

[2] The Court acknowledges that the Second Circuit has applied an alternative standard when evaluating motions to dismiss under Fed. R. Civ. P. 41(b) where a plaintiff altogether refuses to testify at trial. *See Lewis*, 564 F.3d at 579-82. Nevertheless, the Court declines to apply that test here given that Ji did in fact appear and attempt to testify on the day of trial by video link as previously authorized when the Court was under the impression he would be testifying from a jurisdiction that would permit him to do so.

and procedures of China. *See* Hang Aff. ¶¶ 3-6. In addition, Hang affirms that "Judges in China generally have discretion when imposing penalties for criminal law violations." *Id.* ¶ 16.

The Hang Affirmation also attaches original and translated versions of the applicable provisions of various Chinese laws and regulations. *See id.* ¶¶ 10-14, DEs [86-8]-[86-11].[3] Consistent with Hang's recitation of Article 277 of the Chinese Civil Law on the record at trial, quoted above, the version of that provision submitted by Defendants with their motion provides:

> When requesting or providing coordination in transnational legal proceedings, litigant(s) shall do it in conformity with the international treaty entered into by People's Republic of China; or through diplomatic approach in the absence of a treaty.
>
> The embassy and consulate(s) of a foreign country are permitted to serve process, conduct investigations, and to obtain evidence from its own nationals, but shall not violate the law of People's Republic of China or a compulsory measure.
>
> Except for what is described in the forgoing provisions, no foreign authority or individual is allowed to serve process, conduct investigation, or obtain evidence within the borders of People's Republic of China without permission from the authority of the People's Republic of China.

DE [86-7].[4] Defendants also submit Article 15 of the Regulations on the Administration of Foreign Law Firms' Representatives Offices in China (the

---

[3] Each provision of Chinese law submitted by Defendants is accompanied by a sworn Affidavit of Translation signed by Ma, which states that Ma is "fluent in both English and Chinese" and that her translation of the document from Chinese to English "is a true and accurate reflection" of its contents. *See* DEs [86-8]-[86-11].

[4] To the extent that this written translation differs from Hang's oral recitation in Court during the trial, the Court accepts the written translation, as it was apparent that English is not Hang's first language.

"Regulations"), which prohibits foreign attorneys from "rendering legal services involving . . . Chinese legal issues."  DE [86-8].

Moreover, Defendants have provided three separate provisions of Chinese law establishing potential penalties associated with the violations at issue.  Article 30 of the Regulations provides that the unauthorized practice of law in China could subject the violating attorney to "a fine of not less than RMB50,000 and not more than RMB300,000[,]" DE [86-9], *i.e.*, approximately US$7,500 to US$45,000.  In addition, Article 81 of the Exit and Entry Administration Law of the People's Republic of China (the "Administration Law") authorizes the Chinese government to deport "foreigners" who violate Chinese law:

> Where foreigners engage in activities not corresponding to the purposes of stay or residence, or otherwise violate the laws or regulations of China, which makes them no longer eligible to stay or reside in China, they may be ordered to exit China within a time limit.

> Where a foreigner's violation of this Law is serious but does not constitute a crime, the Ministry of Public Security may deport them [*sic*].  The penalty decision made by the Ministry of Public Security shall be final.

> Deported foreigners shall not be allowed to enter China within 10 years calculat[ed] from the date of deportation.

DE [86-10].  Finally, pursuant to Article 13 of the Criminal Law of the People's Republic of China (the "Chinese Criminal Law"), also submitted by Defendants, the Chinese government appears to have broad discretion to punish conduct that it deems a crime:

> A crime refers to an act that endangers the sovereignty, territorial integrity and security of the State, splits the State, subverts the State power of the people's democratic dictatorship and overthrows the

socialist system, undermines the public and economic order, violates State-owned property, property collectively owned by the working people, or property privately owned by citizens, infringes on the citizens' rights of the person, their democratic or other rights, and any other act that endangers society and is subject to punishment according to law. However, if the circumstances are obviously minor and the harm done is not serious, the act shall not be considered a crime.

DE [86-11].

Having analyzed each of the provisions of Chinese law and related regulations presented by Defendants, as well as the remainder of the parties' submissions, the Court finds no basis to depart from its prior ruling on this issue. In their opposition papers, Plaintiffs have neither objected to Defendants' assertions with respect the applicability of the Chinese Civil law to Ji's conduct, nor have they submitted any laws or evidence even suggesting that Defendants' conclusions are incorrect.[5] It is therefore undisputed that, by testifying via video link while located in mainland China, Ji violated Article 277 of the Chinese Civil Law. By participating in those proceedings, Defendants' counsel and potentially all other parties involved violated Article 15 of the Regulations and, thus, could be fined under Article 30. Further, these violations potentially subjected the participating parties to deportation from China under Article 81 of the Administration Law as well as criminal liability under Article 13 of the Chinese Criminal Law.

---

[5] In fact, throughout the pendency of this case, Plaintiffs have repeatedly acknowledged that Chinese law limits a non-citizen's ability to obtain evidence from a Chinese citizen located within the country's borders. *See, e.g.*, DE [53] at 1 ("By the Chinese law, it would be illegal for a U.S. lawyer to depose even a willing Chinese citizen within the country's border. Not only it is [*sic*] illegal to be deposed in China, Plaintiff Ji can face criminal penalties under the Chinese law."); DE [78] ("Chinese nationals cannot be witnesses in U.S. trials within Chinese territory.").

Accordingly, the Court grants Defendants' motion to strike Ji's testimony in its entirety and to preclude Ji from further testifying remotely in this case.

### C. <u>Motion to Enforce the Parties' Settlement Agreement</u>

The Court next turns to Defendants' motion to enforce the terms of the parties' settlement agreement reached in court on March 27, 2018. *See* DE [82]. Defendants argue that the settlement agreement should be enforced because: (i) the parties never made express reservations not to be bound in the absence of a writing; (ii) the parties partially performed by adjourning the ongoing trial and delivering Defendants the formal paperwork; and (iii) all material terms of the settlement were agreed to and set forth on the record before the Court. *See* Defs.' Mem. at 9. In opposition, Plaintiffs assert that "the alleged settlement agreement was not consummated, and the terms are grossly unfair to the Plaintiffs." *See* Pls.' Opp. at 6. They further submit that the principles established in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) (holding that FLSA settlement agreements must be approved either by a Court or by the United States Department of Labor ("DOL") before an action can be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii)), and not those set forth in *Winston*, as summarized above, should apply here given the nature of Plaintiffs' claims. *See* Pls.' Opp. at 6. Although the Court disagrees with the premise that the *Winston* factors set forth above are inapplicable here, the Court nevertheless concludes that the parties' agreement is not enforceable.

In the only Second Circuit case that the Court could find involving a motion to enforce a settlement agreement in an FLSA action, the Circuit applied the *Winston* factors in evaluating enforceability. *See Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011). Although that decision predated *Cheeks*, courts in this district have adopted a similar approach post-*Cheeks*. *See, e.g., Hernandez v. Fresh Diet Inc.*, No. 1:12-cv-4339, 2017 WL 4838328, at *2-4 (S.D.N.Y. Oct. 25, 2017); *Velazquez v. Yoh Servs., LLC*, No. 17-cv-842, 2017 WL 4404470, at *3-4 (S.D.N.Y. Sept. 25, 2017). Hence, this Court likewise considers each *Winston* factor in turn below.

As an initial matter, the Court recognizes that the first and second factors weigh in favor of enforcement. Neither of the parties made an express reservation not to be bound in the absence of a writing, and Defendants partially performed by agreeing to adjourn the ongoing trial. *See* Defs.' Mem. at 9. Further, the Court considers the third factor neutral because, although certain terms were discussed in court, "the existence of even 'minor' or 'technical' points of disagreement in draft settlement documents [is] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *Ciaramella*, 131 F.3d at 325 (quoting *Winston*, 777 F.2d at 82-83).

Nevertheless, the fourth factor weighs heavily against enforcement because agreements to settle FLSA claims are virtually always memorialized in writing. *See Cheeks*, 796 F.3d at 200; *Velazquez* 2017 WL 4404470, at *3 ("[S]ettlements of . . . FLSA claims are of the type typically committed to writing, because they require

judicial approval."). In light of the *Cheeks* requirement that either the Court or the DOL approve any final settlement agreement, all parties here necessarily contemplated that a written agreement would be drafted, executed and approved by the Court. Indeed, Defendants implicitly acknowledged that the settlement agreement would be in writing by preparing a draft agreement. Because the latter two steps never transpired, no final written agreement was consummated, and the settlement agreement is not, and could not be, enforceable under Second Circuit case law. Accordingly, the Court deems the fourth *Winston* factor dispositive and denies Defendants' motion to enforce the parties' settlement agreement on that basis. *See Velazquez*, 2017 WL 4404470, at *4 ("[T]he fourth . . . [*Winston* factor] is, in my opinion, dispositive."); *accord Lin v. Grand Sichuan 74 ST Inc.*, No. 15-cv-2950, 2016 WL 5497837, at *1 (S.D.N.Y. June 23, 2016) ("The defendants conceded . . . that no stipulated settlement agreement resolving the instant action was ever presented to the court or the United States Department of Labor for approval. Therefore, the stipulated settlement agreement that the defendants maintain resolved this action never became effective and cannot be enforced.").

### D. Motion for Sanctions

In addition to the relief discussed above, Defendants request an award of sanctions against Plaintiffs' counsel due to his "overall recalcitrance towards the Federal Rules of Civil Procedure [and] this Court's directives and rules of practice." *See* Defs.' Mem. at 10.[6] Defendants seek such relief pursuant to 28 U.S.C. § 1927

---

[6] Defendants also identify Plaintiffs' decision to withdraw from the settlement agreement as a basis for sanctions. *See* Defs.' Mem. at 10. In light of this Court's denial of Defendants' motion to

28

and this Court's inherent power to sanction improper conduct. *See id.* Where, as here, sanctions are sought against counsel only, "there is no meaningful difference between the type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith." *In re Khan*, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013) (citation omitted), *aff'd sub nom. Dahiya v. Kramer*, No. 13-cv-3079, 2014 WL 1278131 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015).[7]  Consequently, "requests for sanctions under [§] 1927 and pursuant to the court's inherent authority may be decided in a single inquiry, because '[t]he same standard applies to both theories.'" *Id.* (quoting *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010)).

Here, the Court agrees with Defendants that sanctions against Plaintiffs' counsel are justified under the circumstances, as the actions described herein establish bad faith.  Initially, it is undisputed that Plaintiffs' counsel was aware by as early as December 2016 of the relevant limitations imposed under Chinese law pertaining to Ji's ability to testify from mainland China. *See, e.g.*, DE [53].  As noted above, in the course of this proceeding, Plaintiffs have stated:  (i) "By the Chinese law, it would be illegal for a U.S. lawyer to depose even a willing Chinese citizen within the country's border.  Not only it is [*sic*] illegal to be deposed in China, Plaintiff Ji can face criminal penalties under the Chinese law[,]" *id.*; and (ii)

---

enforce the settlement agreement, however, the Court rejects any arguments for sanctions premised on this basis.

[7] One "difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Offor v. Mercy Med. Ctr.*, No. 15-cv-2219, 2016 WL 3566217, at *2 (E.D.N.Y. June 25, 2016), *aff'd sub nom.*, 698 F. App'x 11 (2d Cir. 2017).

"Chinese nationals cannot be witnesses in U.S. trials within Chinese territory[,]" DE [78]. Indeed, mindful of the applicable Chinese laws, this Court denied Plaintiffs' request that Ji's deposition be conducted by videoconference from his residence in mainland China using a service such as Skype and specifically ordered the deposition to proceed in Hong Kong, where it would be lawful. *See* DE [57]. Subsequently, upon Plaintiffs' application, this Court permitted Ji to testify at trial by video link. *See* DE [73]. Importantly though, the Court expressly directed Plaintiffs to "make *whatever arrangements* [*were*] *necessary* for the remote testimony including covering whatever costs are incurred." *Id.* (emphasis added). Further, the Court ordered Ji to "be alone at his remote location with the exception of the videographer." *Id.*

Six days before the scheduled trial date, Plaintiffs requested an adjournment on the basis that they were "*currently arranging* with the courtroom technology personal [*sic*] and IT people in Taiwan to set up the video conferencing for the trial . . . ." DE [76] (emphasis added). Although that motion was granted on the consent of Defendants, *see* Electronic Order dated January 3, 2018, there is no indication in the record that any such arrangements were ever made.

In addition, approximately one month before the rescheduled trial date, Plaintiffs moved for their attorney, Byun, to withdraw as counsel. *See* DE [77]. Importantly, that submission failed to indicate that Byun was responsible for technical matters pertaining to Ji's appearance at trial or that his withdrawal would delay these proceedings. *See id.* Yet, Plaintiffs later relied on Byun's

withdrawal as the primary basis for their second request to adjourn the trial, which this Court denied.

Nevertheless, Plaintiffs' counsel arrived at trial unprepared to proceed in two material respects. First, as Defendants and the Court became aware for the first time during Ji's cross-examination, Ji was located in mainland China and was not utilizing a professional videographer, despite representing otherwise to the Court in prior pleadings. Second, Ji was not in possession of Defendants' exhibits, which had been provided to Plaintiffs' counsel months before the trial, despite earlier representing to the Court that counsel would arrange "for the delivery to Plaintiff Ji of any exhibits that may be used for his testimony." DE [71] at 4. Plaintiffs, through their counsel, not only plainly violated both this Court's order requiring them to make all arrangements necessary for Ji's remote appearance as well as various provisions of Chinese law, they also deceived the Court into believing Ji was testifying lawfully from outside of China. It was only brought to the Court's attention when Defendants inquired as to Ji's location on cross-examination. As a result, Ji's testimony could not proceed further.

Against the backdrop of the procedural history outlined above—and, in particular, this Court's prior orders and other instructions—the Court concludes that Plaintiffs' counsel's actions were undertaken in bad faith. Accordingly, the Court grants Defendants' motion for sanctions and awards Defendants attorneys' fees associated with their: (i) preparation for, and appearance at, trial on March 26 and March 27, 2018; and (ii) preparation of the instant motion. For the sake of

clarity, the Court enters this award against Plaintiffs' counsel, Troy Law, PLLC, only and not against either Plaintiff. Defendants are directed to submit their fee application, along with all appropriate supporting documentation, on or before May 1, 2019. Any opposition must be submitted on or before May 31, 2019.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion is granted in part and denied in part. Ji's trial testimony is stricken and he is precluded from further testifying remotely at trial. In addition, Plaintiffs' counsel will pay Defendants' attorneys' fees and costs incurred in preparing for and attending trial on March 26 and March 27, 2018, and in preparing the instant motion. The fee application will be filed on or before May 1, 2019, and any opposition will be filed on or before May 31, 2019. Defendants' motion is denied in all other respects.

Dated:     Central, Islip, New York
           March 31, 2019          **SO ORDERED**

                                  s/ Steven I. Locke
                                 STEVEN I. LOCKE
                                 United States Magistrate Judge